[Civ. No. 58092. Second Dist., Div. Three. Aug. 28, 1980.]

FIONA KNOX et al., Plaintiffs and Respondents, v.
COUNTY OF LOS ANGELES et al., Defendants and Appellants.

**COUNSEL**

John H. Larson, County Counsel, and Max E. Truex, Deputy County Counsel, for Defendants and Appellants.

William H. Steiner, Roy S. Giordano and Daniel L. Arkin for Plaintiffs and Respondents.

**OPINION**

**POTTER, Acting P. J.**—Defendants County of Los Angeles, Earl H. Gunnerson, and Candace M. Stewart (hereinafter County Defendants) appeal from a judgment, after a trial to the court, in favor of plaintiffs Fiona Knox, Doriane Moyer and Carol Likins, awarding each of the plaintiffs $17,500 damages and costs of suit.

The first amended complaint comprised 11 causes of action. The first, second, eighth, ninth, tenth and eleventh causes of action each sought damages against County Defendants and against Boy's Market and three of its employees (hereinafter Market Defendants), arising out of a single incident in which plaintiffs were arrested by sheriff's deputies at the Boy's Market for alleged violation of a temporary restraining order regulating picketing. The third, fourth, fifth, sixth and seventh causes of action sought damages from *County Defendants only* for alleged intentional infliction of emotional distress, invasion of privacy, assault and battery, and negligent personal injury during plaintiffs' transport, booking and detention following the arrest.

The first cause of action for unlawful arrest charged that Market Defendants and County Defendants were joint venturers and agents, servants and employees of each other, acting within the scope of the agency, employment and joint venture in making the arrests; that all said defendants "did combine, conspire and agree among themselves" to deprive plaintiffs of their rights and liberties, and that "plaintiffs were arrested at the instance, instigation and direction of [Market Defendants] which, in so doing, acted with fraud, malice and oppression toward plaintiffs . . ." since "said defendants witnessed no unlawful conduct by plaintiffs and had no probable cause to believe that any plaintiff had engaged in any unlawful activity."

The second cause of action realleged all of the charging allegations of the first cause of action and added "[a]s a direct and proximate result of the aforementioned false arrests of plaintiffs, plaintiffs, and each of them, were wrongfully confined and deprived of their liberty for a period of approximately three (3) hours, all to each plaintiff's general damage . . . ."

The eighth, ninth, tenth and eleventh causes of action each realleged all of the charging allegations of the first, second, third, fourth, fifth and seventh causes of action, and added allegations to the effect that both Market Defendants and County Defendants advised plaintiffs that they had no right to talk with Boy's Market customers. The total conduct of all defendants is then described as violative of federal civil rights legislation embodied in 42 United States Code sections 1983, 1985(2), 1985(3), and 1986.

Before trial, plaintiffs settled with Market Defendants and executed a request for dismissal which described the action as "False arrest/imprisonment; deprivation of civil rights." The dismissal was with prejudice "[a]s to defendants Boy's Market, Inc., Rudolpho R. Padilla, Larry E. Humphrey and Ken Kennish, only," and by failing to indicate the contrary,[1] plaintiffs dismissed all causes of action against Market Defendants.

Also, at the beginning of the trial, plaintiffs dismissed the sixth cause of action for negligence and the eighth, ninth, tenth and eleventh causes

---

[1]The form contained the following: "If dismissal requested is . . . of specified causes of action only . . . so state and identify the . . . causes of action . . . to be dismissed."

of action[2] for violation of plaintiffs' civil rights. The case then went to trial against County Defendants on the first through seventh causes of action.

In their trial brief, plaintiffs conceded that there had been a settlement with Market Defendants involving the payment of consideration by saying in this connection, "[t]he settlement paid by Boy's Market and its employees . . . ." They argued, however, that there should be no reduction of damages against County Defendants based thereon. Defendants did not address this subject in their trial memorandum; nor did they offer any evidence at the trial as to the amount paid by settling defendants (to avoid any prejudicial inference therefrom).

At the conclusion of the trial the court announced an intended decision to award $17,500 damages to each of the plaintiffs. Defendants requested findings of fact and conclusions of law. Proposed findings and conclusions were submitted by plaintiffs. Defendants lodged objections to a substantial number of findings and to the conclusion that the plaintiffs were each entitled to judgment against County Defendants in the sum of $17,500 (the amount of damage which was found to have been suffered by each of the plaintiffs). Defendants' objection to this conclusion was that "defendants are entitled to a setoff of $4,000.00 as to each plaintiff under Code of Civil Procedure Section 877(a) for a previous settlement by defendants Boys Market, RUDOLPHO R. PADILLA, KEN KENNISH and LARRY E. HUMPHREY." Plaintiffs responded to this objection. The response, however, did not deny that there had been a settlement, nor deny that the amount paid was $4,000 per plaintiff. Plaintiffs merely stated: "There is no factual or legal basis for a 'set-off' for which defense counsel improperly argues. As per his request, no evidence thereon was introduced." They argued that the settlement related to wrongs of Market Defendants which were unrelated to those proven against the remaining defendants.

Without any further evidentiary hearing, findings and conclusions were signed by the court. Findings pertinent to this appeal were that plaintiffs were peacefully picketing and were arrested without warrants by County Defendants who had no probable cause to believe that plain-

---

[2]Pursuant to rule 12(a), California Rules of Court, the entire superior court file has been made a part of the record on this appeal. The minute order of April 24, 1979, shows that these causes of action were dismissed on plaintiffs' motion, and that the first and second causes of action were consolidated.

tiffs were violating the temporary restraining order in the officers' presence. It was also found that "[t]here was no participation by The Boy's Market in the arrests."

Specific findings were made negating the allegations of each of the third, fourth, fifth and seventh causes of action, that is, that there was no intentional infliction of emotional distress, no assault and battery, and no unlawful invasion of privacy. Plaintiffs' damages suffered as a result of the unlawful arrest and the false imprisonment were found to be $17,500 per plaintiff.

From these facts the court concluded that plaintiffs were each entitled to a judgment in the sum of $17,500 against County Defendants, and thereby rejected their contention that they were entitled to a setoff of the amount paid each plaintiff in settlement by Market Defendants.

This appeal followed.

### Contentions

County Defendants contend that the court erred in refusing to reduce the judgment by the amount paid by Market Defendants in settlement. Plaintiffs contend that County Defendants never presented the issue of entitlement to a credit to the trial court and therefore cannot raise it on this appeal, that the error was invited and that in any event the ruling denying credit was proper.

### Discussion

#### Summary

Plaintiffs conceded there was a "settlement paid by Boy's Market and its employees" which resulted in dismissal of the first and second causes of action in which Market Defendants were "claimed to be liable"[3] for unlawful arrest and false imprisonment jointly with County Defendants. In the absence of a showing by plaintiffs that none of the consideration

---

[3]Code of Civil Procedure section 877 provides: "Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors *claimed to be liable for the same tort*—[¶] (a) It shall not discharge any other such tortfeasor from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it whichever is the greater;..." (Italics added.)

paid for the settlement related to these causes of action, defendants were entitled to a credit in some amount. This entitlement was timely raised by County Defendants' objection to the conclusion denying credit. Plaintiffs should, therefore, have been required to answer defendants' allegation that the amount of the settlement was $4,000 per plaintiff so that any factual issue in that respect could be resolved by evidence. We will, therefore, remand for further proceedings to ascertain the amount of credit to which defendants are entitled.

### *Plaintiffs Conceded that Market Defendants Paid for a Settlement*

Plaintiffs requested a dismissal before trial as to Market Defendants only, as to all causes of action, with prejudice. In their trial brief, plaintiffs referred to this dismissal as "the settlement paid by Boy's Market and its employees." When County Defendants relied upon these circumstances to support their claim of an offset, plaintiffs did not attempt to withdraw or explain the above facts. It is, therefore, a conceded fact that there was a dismissal of Market Defendants for which a consideration was paid. (See *Mikialian* v. *City of Los Angeles* (1978) 79 Cal.App.3d 150, 162 [144 Cal.Rptr. 794].)

### *Market Defendants Were Claimed to be Liable for the Same Tort as County Defendants*

Code of Civil Procedure section 877 requires that an offset be given reducing the judgment by the amount of the consideration paid for a dismissal given "to one or more of a number of tortfeasors *claimed* to be liable for the same tort. . . ." (Italics added.) The dismissal of Market Defendants was such a dismissal. Liability was imposed upon County Defendants only for the torts of unlawful arrest and false imprisonment which were stated in the first and second causes of action of the first amended complaint. The first and second causes of action were dismissed as to Market Defendants as part of the settlement. Both of these counts charged Market Defendants with liability for the unlawful arrest and false imprisonment because they engaged in a conspiracy and a joint venture with County Defendants, made them their agents to engage in such unlawful conduct, and instigated and directed the arrests with no probable cause to believe that any plaintiff had engaged in any unlawful activity.

The first amended complaint thus patently claimed that Market Defendants were liable for the same torts (unlawful arrest and false imprisonment) which County Defendants were found to have committed.

■ Code of Civil Procedure section 877 does not require any defendant to prove that settling codefendants were in fact liable, only that they were "claimed to be liable" for the same tort. The trial court's purported finding that "[t]here was no participation by The Boy's Market in the arrests" is, therefore, irrelevant, even if it is construed as a finding that Market Defendants were not joint venturers, coconspirators, and instigators of the arrest.[4] This is clear from the decision of our Supreme Court in *American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899], and the decisions of the Third and Fourth Districts interpreting it. In *American Motorcycle*, our Supreme Court said (*id.*, at p. 604): "Moreover, to preserve the incentive to settle which section 877 provides to injured plaintiffs, we conclude that a plaintiff's recovery from nonsettling tortfeasors should be diminished only by the amount that the plaintiff has actually recovered in a good faith settlement, rather than by an amount measured by the settling tortfeasor's proportionate responsibility for the injury. (See Fleming, *Foreword: Comparative Negligence At Last—By Judicial Choice* (1976) 64 Cal.L.Rev. 239, 258-259.)"

In *Jaramillo v. State of California* (1978) 81 Cal.App.3d 968, 970 [146 Cal.Rptr. 823], the Third District rejected a plaintiff's contention that the nonsettling defendant was only entitled to have the judgment against it "'reduced by the proportion of liability attributable to settled cotortfeasors rather than by the amount of consideration given for the settlement.'" The court said (*id.*, at p. 971): "Any lingering doubts on the merits of plaintiff's position have now been completely dispelled by the decision in *American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899]. In that case the court reaffirmed the doctrine of joint and several liability. (20 Cal.3d at pp. 583, 586-591.) More significantly, the court categorically rejected plaintiff's main thesis:..."

---

[4] In view of the allegations of the first amended complaint, an appropriate adverse finding would have negated the existence of a joint venture, conspiracy or instigation on the part of Market Defendants. The finding of no "participation," however, is consistent with there having been a conspiracy, joint venture and instigation but no physical participation by Market Defendants in the actual arrest.

The Fourth District reached the same conclusion in *McGee* v. *Cessna Aircraft Co.* (1978) 82 Cal.App.3d 1005, 1022, [147 Cal.Rptr. 694], where the court said: "We conclude, and for guidance of the trial court upon any retrial of this matter observe: plaintiff's recovery, if any, from Cessna should be diminished only by the amount plaintiff actually recovered in a good faith settlement rather than by an amount measured by the settling tortfeasor's proportionate responsibility for the injury."

The foregoing demonstrates that under the uncontradicted facts, County Defendants were entitled to some credit in respect of the settlement paid by Market Defendants.

*County Defendants Timely*
*Raised the Issue of Credit*
*Pursuant to Code of Civil*
*Procedure Section 877*

■ Code of Civil Procedure section 877 does not specify how nonsettling defendants shall raise the claim of an offset based thereon. No formal pleading is required inasmuch as the settlement may not occur until after the pleading stage is completed. Also, especially in jury cases, the defendant should not be required to prejudice its defense by disclosing substantial settlements made by codefendants.

Plaintiffs' reliance upon *Love* v. *Wolf* (1967) 249 Cal.App.2d 822 [58 Cal.Rptr. 42], is misplaced. In that case, the issue of offset was not raised until a motion for new trial and even at that time the affected defendant made no request for reduction of the judgment on such basis. The appellate court, therefore, quite correctly concluded that "the matter of these payments is not before this court." (*Id.*, at p. 843.)

The contrary is true in the case at bench. County Defendants raised the issue of their right to an offset before judgment by an appropriate objection to the court's conclusion that plaintiffs were entitled to a judgment for the full amount of their damage. It was appropriate for County Defendants to defer this issue until the court had indicated that they were to be found liable. There was no occasion to consider an offset until liability was found; and there is ample precedent for deferring the offset issue until after the determination of the merits.

In *Cseri* v. *D'Amore* (1965) 232 Cal.App.2d 622, 625 [43 Cal.Rptr. 36], it was held proper to exclude evidence of the pretrial settlement by

one joint tortfeasor from the jury's consideration, leaving it to the court to apply Code of Civil Procedure section 877 to reduce the verdict.

This subject was further dealt with in *River Garden Farms, Inc.* v. *Superior Court* (1972) 26 Cal.App.3d 986, 1003 [103 Cal.Rptr. 498], where the court observed: "In most cases evidence of the circumstances of the settlement would clutter the tort trial with irrelevancies and possible prejudice. The trial court may hear and decide the defendant's claim as a separate defense under Code of Civil Procedure section 597 or order a separate trial of the good faith issue under section 1048."

The most recent case is *Lareau* v. *Southern Pac. Transportation Co.* (1975) 44 Cal.App.3d 783 [118 Cal.Rptr. 837]. There the court commented that the question of the amount of an offset "should likewise be subject to some form of judicial determination *after the completion of the trial* and the establishment of liability on the part of the remaining defendant. . . ." (*Id.*, at p. 796.) (Italics added.)

Consequently, it was entirely proper for County Defendants in this case to defer assertion of their claimed right to offset until after establishment of liability on their part. Nor do we find anything inappropriate in the means which they employed to raise this issue. Plaintiffs were well aware of the problem as indicated by their trial brief. Despite that awareness, plaintiffs submitted a proposed conclusion which denied any credit. The objection by County Defendants to this conclusion was as suitable as any other means to bring before the court their claim of entitlement to credit pursuant to Code of Civil Procedure section 877.

*Plaintiffs Should Have Been Required to*
*Answer County Defendants' Allegations*
*as to the Amount Paid in Settlement of*
*the Unlawful Arrest and False Imprisonment*
*Claims so that any Factual Issues Could*
*Be Resolved by an Evidentiary Hearing*

The claim of County Defendants as to a setoff was based upon plaintiffs' concession that settlement had been "paid" and the dismissal with prejudice of Market Defendants. The record did not show, however, how much had been paid in settlement nor whether there was any apportionment of the settlement between the various causes of action in which Market Defendants and County Defendants were jointly charged.

Since both these matters were entirely within the knowledge of the plaintiffs, County Defendants alleged what they apparently believed to be the amount paid each plaintiff and asked for an offset of the total amount. Plaintiffs did not controvert the allegation that the total settlement was $4,000 per plaintiff. Rather, they simply stated the legal conclusion that "[t]here is no factual or legal basis for a 'setoff'. . ." and relied in this respect upon the fact that as per defense counsel's request, no evidence had been introduced respecting the settlement. It was also argued that: (1) "there was no evidence that The Boys' Market was involved in any wrong-doing or injury alleged and proven against the remaining defendants," and (2) Market Defendants "were charged with and responsible for a wrong and an injury occurring at a different time." The other wrong specified by plaintiffs was Market Defendants' violation of plaintiffs' First Amendment rights by allegedly representing that plaintiff must "desist from telling potential customers not to shop at The Boys' Market."

Plaintiffs' response at most created an issue of fact as to the amount of an offset to which County Defendants were entitled. By failing to deny the allegation that the amount of settlement was $4,000 per plaintiff, it justified a finding that that was the sum paid. It impliedly asserted that all this sum was paid on account of the eighth, ninth, tenth and eleventh causes of action for violation of plaintiffs' civil rights. But no evidence was offered in support of this claim, and in view of the form of the dismissal the burden was upon plaintiffs to establish such facts. The dismissal included the first and second causes of action for unlawful arrest and false imprisonment in which Market Defendants clearly were alleged joint tortfeasors with County Defendants.

Absent some good faith agreement between plaintiffs and Market Defendants allocating the settlement consideration as between the six causes of action in which joint tortfeasor status was alleged, defendants were entitled to a setoff of the entire settlement figure. Every cause of action which followed it incorporated the entire allegations of the first cause of action, and it is apparent that all six counts related to the same course of events and merely stated different legal theories for recovery in respect thereof.

It is, therefore, apparent that the court should have required an evidentiary showing by plaintiffs establishing and justifying an agreed allocation of less than all of the $4,000 settlement figure to the first and second causes of action. Had such an allocation been shown, its effec-

tiveness would depend upon finding it to be a good faith allocation. The statutory requirement of good faith extends not only to the amount of the overall settlement but as well to any allocation which operates to exclude any portion of the settlement from the setoff. (*River Garden Farms, Inc.* v. *Superior Court, supra,* 26 Cal.App.3d at p. 993; *Lareau* v. *Southern Pac. Transportation Co., supra,* 44 Cal.App.3d at p. 798.) It is apparent, therefore, that an evidentiary hearing is required to establish a factual basis, if any there is, for denying County Defendants credit for the full amount of the settlement.

The judgment is reversed, and the cause is remanded for further proceedings consistent with the views above expressed.

Cobey, J., and Allport, J., concurred.