[No. B079299. Second Dist., Div. Four. Nov. 7, 1995.]

MATTHEW POIRE, Plaintiff and Appellant, v.
C.L. PECK/JONES BROTHERS CONSTRUCTION CORPORATION,
INC., Defendant and Appellant.

COUNSEL

Booth & Koskoff, Johnna Hansen and Marian H. Tully for Plaintiff and Appellant.

Cummings & Kemp, Thomas B. Cummings, Scott A. Whitcomb and Everett Skillman for Defendant and Appellant.

OPINION

EPSTEIN, Acting P. J.—There are two issues in these cross-appeals from a judgment in favor of Matthew Poire against C.L. Peck/Jones Brothers Construction Corporation, Inc. (Peck/Jones) for injuries suffered in a construction accident. Peck/Jones argues the trial court erred by refusing to reduce the judgment by an offset for amounts paid to plaintiff by settling defendants. Plaintiff argues that he was entitled to costs, including expert witness fees, under Code of Civil Procedure section 998[1], because his judgment was more than his statutory offer to settle. He contends that the trial court erred in concluding that the amount of workers' compensation benefits received by a plaintiff must be deducted from the judgment before determining whether plaintiff received a more favorable result within the meaning of section 998.

We conclude that Peck/Jones was entitled to an offset under established precedent interpreting section 877, subdivision (a). We also conclude that Mr. Poire was entitled to expert witness fees and costs under section 998.

FACTUAL AND PROCEDURAL SUMMARY

In February 1990, the University of California, Los Angeles Medical Plaza and adjacent facilities were under construction. Peck/Jones was the general contractor on the project. Mr. Poire was employed by Merco Construction Engineers, the contractor for site development and landscape work. Tri-County Sandblasting Corporation was the sandblasting subcontractor. Morley Construction Corporation was another general contractor for construction of an adjacent below-grade parking facility.

Plaintiff walked down a plank ramp running from a window in the medical building to the ground level below. He slipped on sand and fell to

---

[1]All further statutory references are to the Code of Civil Procedure unless otherwise stated.

the ground, sustaining injuries. An action for personal injuries on behalf of Mr. Poire and for loss of consortium by his wife, Brenda Poire, was brought against Peck/Jones, Morley, and Tri-County.[2]

Merco's insurer intervened for workers' compensation benefits paid plaintiff. Before trial, Peck/Jones purchased the workers' compensation lien in the amount of $82,424.48. Thereafter, plaintiff served an offer to compromise pursuant to section 998 on Peck/Jones, offering to settle the action for $149,999.99. The offer was not accepted.

Morley settled with plaintiff for $30,000 and Tri-County settled with him for $15,000. Each settling defendant brought a motion for determination that its settlement was in good faith (§ 877). Both motions were granted.

Trial proceeded against Peck/Jones. The jury returned a special verdict, awarding plaintiff $202,000 in economic damages and $83,000 in noneconomic damages. The jury apportioned fault as follows: Mr. Poire, 20 percent; Peck/Jones, 40 percent; Merco, 40 percent; Morley, 0 percent; and Tri-County, 0 percent.

The parties proposed alternative judgments based on the special verdict, with different calculations of the damages awarded. Judgment on special verdict awarded plaintiff $114,000 plus interest against Peck/Jones.

Peck/Jones moved to set aside the judgment (§§ 663, 663a) on the following grounds: (1) that it was entitled to a setoff for the settlements paid by Morley and Tri-County under section 877, subdivision (a); (2) the court misapplied Proposition 51 (Civ. Code, § 1431.2) in the award of noneconomic damages; and (3) the date from which interest on the judgment ran was incorrect. Plaintiff filed an application for expert witness costs and fees under section 998.

The trial court denied both posttrial motions. It found "there should be no set-off to defendant for the settling defendants who were found by the jury to have no liability." In denying plaintiff's motion for expert witness costs and fees, the trial court concluded "it would be unfair and unequitable to apply the Manthey [*Manthey* v. *San Luis Rey Downs Enterprises, Inc.* (1993) 16 Cal.App.4th 782 (20 Cal.Rptr.2d 265)] decision to this case retroactively." The trial court observed: "[T]he intent is to encourage people at the time settlement offers are made to do so fairly and openly and make good faith

---

[2]We are informed that Mrs. Poire's action for loss of consortium was dismissed before trial.

efforts to settle cases, and applying Manthey retroactively does not further that."

The trial court entered an amended judgment on a form supplied by counsel for plaintiff. The amended judgment awarded damages as follows:

"1.  Plaintiff's total economic damages                                    $202,000.00
"2.  Less plaintiff's comparative negligence                              - 40,400.00
      (20%)
"3.  Less full amount of benefits paid under
      Workers Compensation system                                          - 82,424.48
"4. Add defendant C.L. Peck/Jones Brothers
      Construction Corporation's share of noneconomic
      damages (40% x $83,000.00)                                            + 33,200.00
"5.  Net monetary judgment gainst Defendant
      C.L. Peck/Jones Brothers Construction
      Corporation                                                           $ 112,375.52"

Peck/Jones filed its notice of appeal and Mr. Poire filed his notice of cross-appeal.

I

*Section 877 Setoff*

Is a nonsettling defendant entitled to a setoff from plaintiff's award of economic damages in the amount of settlements paid prior to trial by other defendants, despite the jury's finding that the settling defendants had no fault for plaintiff's injuries? The answer requires examination of two independent statutory schemes—section 877 and Civil Code section 1431.2, the latter a provision of the Fair Responsibility Act of 1986 (popularly known as Proposition 51). As we shall explain, we conclude that a setoff is required under section 877 because Proposition 51 did not change the law with respect to economic damages.

Section 877 provides in pertinent part: "Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort . . . it shall have the following effect: [¶] (a) It shall not discharge any other such party from liability unless its terms so provide, *but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it whichever is the greater.*"

(Italics added.) " '[T]he major goals of the [legislation enacting section 877] are, first, equitable sharing of costs among the parties at fault, and second, encouragement of settlements.' [Citation].)" (*Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488, 494 [213 Cal.Rptr. 256, 698 P.2d 159].)

Civil Code section 1431.2. provides in pertinent part: "(a) In any action for personal injury . . . , based upon principles of comparative fault, the liability of each defendant for *non-economic* damages shall be several only and shall not be joint. Each defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount." (Italics added.)

Our Supreme Court thoroughly examined the legislative history of Civil Code section 1431.2. in *Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188, 1196-1200 [246 Cal.Rptr. 629, 753 P.2d 585]. The court concluded: "Proposition 51 retains the traditional joint and several liability doctrine with respect to a plaintiff's *economic* damages, but adopts a rule of several liability for *noneconomic* damages, providing that each defendant is liable for only that portion of the plaintiff's noneconomic damages which is commensurate with that defendant's degree of fault for the injury." (*Id.* at p. 1198; see also *DaFonte* v. *Up-Right, Inc.* (1992) 2 Cal.4th 593, 600 [7 Cal.Rptr.2d 238, 828 P.2d 140] ["Proposition 51 thus retains the joint liability of all tortfeasors, regardless of their respective shares of fault, with respect to all objectively provable expenses and monetary losses."].)

The interplay between section 877 and Civil Code section 1431.2. has been examined by a number of courts. (See *Conrad* v. *Ball Corp.* (1994) 24 Cal.App.4th 439 [29 Cal.Rptr.2d 441]; *Hoch* v. *Allied-Signal, Inc.* (1994) 24 Cal.App.4th 48 [29 Cal.Rptr.2d 615]; *Espinoza* v. *Machonga* (1992) 9 Cal.App.4th 268 [11 Cal.Rptr.2d 498]; *In re Piper Aircraft*, (N.D.Cal. 1992) 792 F.Supp. 1189.) The following principles have been established. First, each defendant is solely responsible for its share of noneconomic damages under Civil Code section 1431.2. Therefore, a nonsettling defendant may not receive any setoff under section 877 for the portion of a settlement by another defendant that is attributable to noneconomic damages. (See *Espinoza*, *supra*, 9 Cal.App.4th at pp. 274-275; *Hoch*, *supra*, 24 Cal.App.4th at p. 63.) Second, where a plaintiff has received a pretrial settlement from a different defendant, the portion of the settlement which may be set off from a subsequent jury award of economic damages to the plaintiff must be determined by application of the percentage of the jury award of economic

damages in relationship to the total award of damages. (See *Espinoza, supra,* 9 Cal.App.4th at p. 277.)

Peck/Jones argues that it is entitled to a setoff of 70.88 percent of the settlements because the percentage of the jury's award of total damages ($285,000) attributable to economic damages ($202,000) is 70.88, under the formula adopted in *Espinoza* v. *Machonga, supra,* 9 Cal.App.4th at p. 277.) Mr. Poire argues that Peck/Jones is not entitled to any setoff for the $45,000 in settlement proceeds from Morley and Tri-County because the jury found these defendants had no fault. The trial court adopted this position in denying the setoff.

As we have seen, Proposition 51 did not change the traditional rules of joint liability with respect to an award of economic damages, as opposed to noneconomic damages. Therefore, we must examine whether a setoff under section 877 is available where the settling defendant is ultimately found to have no fault.

In *Knox* v. *County of Los Angeles* (1980) 109 Cal.App.3d 825 [167 Cal.Rptr. 463], three picketers brought an action against a supermarket, several of its employees, the county, and county employees for various torts arising out of an incident in which the plaintiffs were arrested at the market. Prior to trial, each plaintiff received a $4,000 settlement from the market and its employees. Following a court trial, each plaintiff was awarded $17,500 in damages. The trial court found "there was no participation by [the market] in the arrests." (*Id.* at p. 831.) The trial court declined to allow a setoff to the other defendants for the settlements paid by the market defendants.

The appellate court reversed, reasoning that section 877 "does not require any defendant to prove that settling codefendants were in fact liable, only that they were 'claimed to be liable' for the same tort. The trial court's purported finding that '[t]here was no participation by [the market] in the arrests' is, therefore, irrelevant, even if it is construed as a finding that Market Defendants were not joint venturers, coconspirators, and instigators of the arrest. This is clear from the decision of our Supreme Court in *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899], and the decisions of the Third and Fourth Districts interpreting it. In *American Motorcycle,* our Supreme Court said (*id.,* at p. 604 [146 Cal.Rptr. at p. 199, 578 P.2d at p. 916]): 'Moreover, to preserve the incentive to settle which section 877 provides to injured plaintiffs, we conclude that a plaintiff's recovery from nonsettling tortfeasors should be diminished only by the amount that the plaintiff has actually

recovered in a good faith settlement, rather than by an amount measured by the settling tortfeasor's proportionate responsibility for the injury. [Citation.]' " (109 Cal.App.3d at p. 833, fn. omitted.)

The *Knox* court also relied on *Jaramillo v. State of California* (1978) 81 Cal.App.3d 968 [146 Cal.Rptr. 823], which rejected a plaintiff's argument that the nonsettling defendant was entitled to have the judgment against it " 'reduced by the proportion of liability attributable to settled co-tortfeasors rather than by the amount of consideration given for the settlement.' " (*Id.* at p. 970.) The *Jaramillo* court observed that the language of section 877 requires reduction of a judgment "by amounts paid by settling joint tortfeasors. This statutory directive of itself defeats plaintiff's claim. [Citation.]" (81 Cal.App.3d at p. 971.) *Jaramillo* also relied on the same language in *American Motorcycle Assn. v. Superior Court, supra,* 20 Cal.3d 578, quoted in the passage from *Knox* we have cited, reiterating that the amount of a setoff is not determined by the settling tortfeasor's proportionate share of responsibility for the injury. (81 Cal.App.3d at p. 971.)

The Ninth Circuit, applying California law, reached the same result in *Vesey v. United States* (9th Cir. 1980) 626 F.2d 627. *Vesey* was an action for wrongful death brought on behalf of the decedent's widow, minor son, and estate. The action arose out of a plane crash. The airline settled the claims for $95,000. In a separate multidistrict action, the United States was found liable for negligence on the part of its air traffic controllers and the court found no negligence on the part of the airline. (*Id.* at p. 629.) Thereafter, the Vesey wrongful death action was tried in the United States District Court for the Central District of California. The trial court allowed a setoff of the $95,000 proceeds of the settlement with the airline.

On appeal, the plaintiffs argued that no setoff should have been allowed because the airline was found not liable. (626 F.2d at p. 632.) The Ninth Circuit rejected the argument. "The provisions of section 877 of the California Code [of Civil Procedure] apply to any person who is an 'alleged tortfeasor.' [Citation.] . . . . [The airline's] subsequent exoneration of negligence in the liability trial is of no legal significance in the present case. Additionally, the fundamental purpose of [section] 877 of the California Code [of Civil Procedure] is to preclude a double recovery arising out of the same wrong. [Citation.]" (*Id.* at pp. 632-633.)

At oral argument, Mr. Poire's counsel suggested that Peck/Jones should have sought an allocation between economic and noneconomic damages at the section 877.6 hearing. We take this argument to be that the failure of

Peck/Jones to do so constituted a waiver of its right to raise the issue later. If this is the argument made by Mr. Poire, we disagree. What is significant is the jury's allocation of damages. In *Conrad* v. *Ball Corp., supra*, 24 Cal.App.4th 439, which was cited by counsel for Mr. Poire, the defendant was found to have waived any right to an offset by failing to propose a special verdict form by which the jury would make the necessary allocation between economic and noneconomic damages. (*Id.* at p. 444.) Our case is distinguishable because the jury here made just such an allocation.

We conclude the trial court erred in rejecting Peck/Jones's request for a setoff from the award of economic damages for the amount paid by the settling codefendants. We apply the formula developed by the court in *Espinoza* v. *Machonga, supra*, 9 Cal.App.4th at page 277. Here, the jury awarded a total of $285,000 in damages, $202,000 of which were for economic damages. The percentage of the total award attributable to economic damages is 70.88. Therefore, Peck/Jones was entitled to a setoff of 70.88 percent of the $45,000 in settlement proceeds, which is $31,896.00.

II

*Section 998*

In his cross-appeal, Mr. Poire argues that the trial court erred in deducting the amount of the workers' compensation lien purchased by Peck/Jones from the judgment before determining that Peck/Jones obtained a more favorable judgment than the settlement offered within the meaning of section 998. The trial court denied Mr. Poire's application for expert witness fees and costs based on this calculation.

Section 998, subdivision (d) provides: "If an offer made by a plaintiff is not accepted and the defendant fails to obtain a more favorable judgment, the court in its discretion may require the defendant to pay a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, the preparation or trial of the case by the plaintiff, in addition to plaintiff's costs." In *Culbertson* v. *R.D. Werner Co., Inc.* (1987) 190 Cal.App.3d 704, 708 [235 Cal.Rptr. 510], the court held that a defendant making a section 998 offer need not take into account a lien against the judgment when making the offer. That principle was applied in *Manthey* v. *San Luis Rey Downs Enterprises, Inc.* (1993) 16 Cal.App.4th 782 [20 Cal.Rptr.2d 265], in which the court concluded that the determination of

whether the plaintiff obtained a more favorable judgment under section 998 must be based on the amount of the award before deduction of the amount of the workers' compensation lien. (16 Cal.App.4th at p. 790.) The *Manthey* court reasoned: " '[T]he Legislature adopted [Code of Civil Procedure section 998] to encourage early settlement of lawsuits to avoid the time delay and economic waste of trial, and to reduce the number of meritless lawsuits by requiring the losing party to pay the costs incurred by the prevailing party.' [Citation.] There is nothing contrary to the purpose of this section in finding Manthey obtained a more favorable judgment within the meaning of its provisions despite the fact that the judgment she received had a lien against it. Manthey had a meritorious claim and the later deduction of a lien from the judgment has no effect on the validity of Manthey's claim. [Citation.]" (*Id.* at pp. 790-791.)

Peck/Jones argues that *Manthey* should not be applied retroactively to this action. The case was decided on June 16, 1993. That was after the accident and after the section 998 offer in this case, but only a short time before the judgment was entered. The trial court expressly declined to give *Manthey* retroactive effect. Mr. Poire argues that *Manthey* does not fall within the narrow exceptions to the general rule that decisions are to be applied retroactively.[3]

▇ "Judicial decisions, particularly those in tort cases, are generally applied retroactively. (*Newman* v. *Emerson Radio Corp.* (1989) 48 Cal.3d 973, 981-982 [258 Cal.Rptr. 592, 772 P.2d 1059].) However, the rule is not absolute and exceptions have been recognized based upon considerations of fairness, foreseeability and public policy. Among factors relevant to the analysis are the extent and reasonableness of reliance on the former rule, the purposes to be served by the new rule, and the effect of retroactivity on the administration of justice. [Citations.]" (*Owens* v. *Giannetta-Heinrich Construction Co.* (1994) 23 Cal.App.4th 1662, 1669-1670 [29 Cal.Rptr.2d 11].)

▇ We follow the reasoning of the *Manthey* court in concluding that the section 998 determination should be made before workers' compensation benefits are deducted from the judgment. Our conclusion is not altered by Peck/Jones's reliance on *Engle* v. *Endlich, supra,* 9 Cal.App.4th 1152. That opinion does not address the issue presented in *Manthey*. We see no reason not to apply the general rule of retroactivity to this case. The trial court erred in ruling that Mr. Poire is not entitled to expert witness fees and costs under

---

[3]Mr. Poire does not challenge the amount of the credit for the workers' compensation lien. (Cf. *Engle* v. *Endlich* (1992) 9 Cal.App.4th 1152 [12 Cal.Rptr.2d 145].)

section 998 because the correct amount of the judgment, before reduction for the amount of workers' compensation benefits paid, is as follows:

| | |
|---|---|
| Economic damage award | $202,000.00 |
| Minus plaintiff's comparative negligence (20% x $202,000) | - 40,400.00 |
| Minus setoff for settlements by other defendants | - 31,896.00 |
| Total economic damages = | $129,704.00 |
| Plus Peck/Jones's share of noneconomic damages | 33,200.00 |
| Total amount of judgment before workers' compensation deduction = | $162,904.00 |

This amount exceeds the $149,999 settlement offer made pursuant to section 998. We remand the matter to the trial court for its exercise of discretion (§ 998, subd. (d)) as to Mr. Poire's entitlement to recover expert fees and costs.

DISPOSITION

The judgment is reversed and the matter remanded for further proceedings consistent with the opinions expressed in this decision. Each party is to bear its costs on appeal.

Hastings, J., and Klein (Brett), J.,* concurred.

---

*Judge of the Municipal Court for the Los Angeles Judicial District sitting under assignment by the Chairperson of the Judicial Council.